# Holst & Co. *v.* Harmon.

## *Action of Trover.*

1. *Mortgage; uncertainty of property intended to be conveyed.*—A mortage given to secure a certain sum of money and other advances that may be made to the mortgagor "during the present or next year," which describes the property mortgaged as "my entire crop grown the present or next year by me, or under my direction, on my plantation. * * * And also all claims for rent or advances for the present or next year," is not void for uncertainty of description of the property intended to be conveyed.

2. *Same; trover maintained for chattels covered by different mortgages from separate mortgagors; each mortgage admissible in evidence.*—A mortgagee can maintain trover for the conversion of several chattels which were embraced in separate mortgages from separate mortgagors; and each of the mortgages are admissible in evidence for the purpose of proving plaintiff's title to the property alleged to have been converted.

3. *Same; when includes crops raised by others; trover.*—A mortgage to secure advances, which embraces all the crops grown by the mortgagor or under his direction, includes a bale of cotton grown by him and his sister, who was a member of his family and subsisted on the supplies furnished by the mortgagee under the mortgage; and where such cotton has been

wrongfully converted by another to his own use, the mortgagee can maintain trover against such third person therefor.

4. *Trover; admissibility in evidence of warehouse receipt.*—Where the plaintiff in an action of trover, to recover damages for the conversion of several bales of cotton, claims under a mortgage of a crop of cotton executed to him by one S. W. Tompkins, and the latter testified that he stored the cotton which was purchased by defendant in a warehouse and that he supposed that certain receipts issued by said warehouse in the name of S. W. Compkins were issued to him for said cotton, and it was shown that on the stubs of the warehouse receipt book corresponding in marks, numbers and dates with the receipts issued to S. W. Compkins there was written "S. W. T.," such warehouse receipts are admissible in evidence, together with the evidence tending to identify the cotton for which they were given as cotton raised by plaintiff's mortgagor.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. J. W. FOSTER.

This was an action of trover, brought by the appellee, R. L. Harmon, against J. B. Holst & Co., to recover damages for the alleged conversion by the defendants of a certain number of bales of cotton. The defendants pleaded not guilty and by special plea that they were *bona fide* purchasers of the cotton, the subject matter of the suit, for value, without notice of the plaintiff's claim.

It was admitted that the defendants purchased and disposed of the cotton described in the complaint. The plaintiff offered in evidence a mortgage which was executed by S. W. Tompkins to R. L. Harmon, bearing date April 14, 1894, and recorded in the office of the Probate Judge of Pike county on April 23, 1894. The contents of this mortgage so far as is necessary to a consideration of the present case, is stated in the opinion. The defendants objected to the introduction of said mortgage in evidence upon the following grounds: 1st. Said mortgage is void for that it fails to convey a certain and definite property. 2d. Said mortgage is void for that it seeks to convey one of two crops, but fails to designate which crop. The court overruled this objection, allowed the mortgage to

be introduced in evidence, and to this ruling the defendants duly excepted. The plaintiff then offered in evidence a mortgage executed by J. W. Tompkins to R. L. Harmon on April 9, 1894, and recorded in the office of the Probate Judge of Pike county on April 10, 1894. The stipulations of this mortgage were substantially the same as the mortgage executed by S. W. Tompkins to the plaintiff, which is copied in the opinion. The defendant objected to the introduction in evidence of the mortgage executed on April 9, 1894, upon the same grounds as were interposed to the introduction in evidence of the mortgage executed on April 14, and upon the additional grounds: 1st. It describes a different crop or crops from the crop sought to be conveyed by the mortgage executed on April 14th, and already introduced in evidence. 2d. It sets up and asserts a different source of title to a different crop from the mortgage already introduced in evidence. The court overruled each of these objections, allowed said mortgage to be introduced in evidence, and to this ruling the defendants duly excepted. The defendants then moved the court to require the plaintiff to elect as to which of said mortgages he relied on for title to the cotton, the subject matter of the suit. The court overruled this motion and to this ruling the defendants duly excepted.

The plaintiff then offered in evidence certain cotton receipts, issued by the Alabama Warehouse Company, in the city of Troy, Pike county, Alabama, designating the certain bales of cotton described in the complaint, and which the defendants admitted were sold and disposed of by them. Two of these cotton receipts were issued to J. W. Tompkins and one to S. W. Tompkins. Two of them were issued to "S. W. Compkins" and one was issued to C. G. Tompkins.

J. W. Tompkins, a witness for the plaintiff, testified that he rented farm lands in Pike county in the year 1894; that he obtained advances for the purpose of making a crop on said lands from the plaintiff Harmon, and that he carried his cotton to the city of Troy and stored it in a warehouse, for which he received the warehouseman's receipt; that he did not know of any other person

named J. W. Tompkins in Pike county, and that he carried no cotton to Troy in the year 1894 except the cotton raised by him on the lands he rented. This witness further testified that C. G. Tompkins, was his sister and lived with him as a member of his family during the year 1894; that the bale of cotton stored in the name of C. G. Tompkins, for which a warehouse receipt was issued, was raised by his sister on the lands rented by. him during the year 1894; that he had no interest in said bale of cotton, and it belonged wholly to his sister; that he and his sister worked through the whole crop together, and that the advances issued to them in making the crop, including the one bale of cotton, were obtained from the plaintiff.

S. W. Tompkins, a witness for the plaintiff, testified that he raised a crop of cotton on rented lands in Pike county, in the year 1894; that he obtained advances with which to make said crop from R. L. Harmon; that he stored the cotton, after it was gathered, in the Alabama Warehouse in Troy, during the fall and winter of 1894, and that he only stored in the Alabama Warehouse cotton raised on lands rented by him. Upon being shown the warehouse receipts issued to "S. W. Compkins" he stated that he supposed they were issued to him for cotton stored at the Alabama Warehouse; that he did not know any person by the name of S. W. Compkins. The plaintiff as a witness testified that S. W. Tompkins said to him that he raised three bales of cotton during the year 1894 and stored it all at the Alabama Warehouse. The plaintiff further testified that he examined the receipts which had been taken up by the warehouse, showing all the cotton which had been stored at the said warehouse and shipped during the year 1894; that he went through the books of the warehouse with the proprietor, and found on the stubs of the receipt book, indorsements corresponding with the marks, numbers and dates of the receipts issued to S. W. Compkins, and that on said book, where each of said receipts had been torn off, there was written "S. W. T."

The defendant then separately and severally moved the court to exclude from the evidence these cotton re-

ceipts which had been introduced by the plaintiff, upon the ground that they had not been identified as receipts for the property covered and conveyed by the mortgages introduced in evidence. The court overruled this motion, as to all of said receipts, and the defendants separately excepted to each of said rulings.

The defendants then moved the court to exclude from the evidence the two cotton receipts with the name of "S. W. Compkins," upon the ground that they had not been identified as the receipts given for the property covered by the mortgage introduced in evidence; that they were not shown to have been given for the cotton raised under the direction of or by S. W. Tompkins, and that the plaintiff had failed to show title to the two bales of cotton for which the receipts were given. The court overruled this motion, and the defendant duly excepted.

The defendant then moved the court to exclude from the evidence the cotton receipt issued in the name of C. G. Tompkins, upon the same grounds. The court overruled this motion, and the defendant duly excepted.

The court, in its general charge, instructed the jury, among other things, as follows: "I charge you, gentlemen, that as a matter of law, if you believe from the evidence, that the bale of cotton marked (99) No. 2, weighing 535 pounds, and stored in the name of C. G. Tompkins, by J. W. Tompkins, was raised on the land rented and cultivated by J. W. Tompkins and his sister during the year 1894, and defendant disposed of the same, then it would be embraced in plaintiff's mortgage, and if the defendant had notice of said mortgage on said cotton, the plaintiff will be entitled to recover the value of said bale of cotton." To this portion of the court's general charge the defendants duly excepted.

There were verdict and judgment for the plaintiff. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

E. R. BRANNEN, for appellant.—The mortgages upon which the plaintiff relied as giving title to the cotton alleged to have been converted, were void for uncertainty,

and they should not have been admitted in evidence. The general rule for the construction to be given mortgages is that generality and indefiniteness in the description of the property are not sufficient to avoid the mortgage, but there must be uncertainty, which remains after the mortgage has been interpreted in the light of the attendant circumstances; the clear intent of the parties being regarded.—Jones on Chattel Mortgages, § § 53, 55, 55a, 60, 61; *Smith v. Fields,* 79 Ala. 337; *Connally v. Spragins,* 66 Ala. 258; *Ellis v. Martin,* 60 Ala. 394; *Varnum v. State,* 78 Ala. 28. In the mortgages in question there was a patent ambiguity in description of the crops sought to be conveyed, and such ambiguities can not be explained or made certain by parol evidence.—Jones on Chattel Mortgages, § § 53, 55, 55a, 60, 61; *Chambers v. Ringstaff,* 69 Ala. 143; *Russell v. Tarver,* 25 Ala. 480; *Long v. Pace,* 42 Ala. 495.

The court erred in overruling the appellant's motion to exclude from the evidence in the case the two cotton receipts in the name of "S. W. Compkins," for the reason that the evidence failed to show that said two bales of cotton were covered by either of the mortgages in evidence, or that the appellee had any title or claim thereto.

The court also erred in overruling the appellant's motion to exclude from the evidence in the case the cotton receipt in the name of C. G. Tompkins, for the reason that the evidence failed to show that said bale of cotton was covered by either of the mortgages in evidence, or that the appellee had any title or claim thereto, but that in fact said bale of cotton was the property of C. G. Tompkins, who was not liable on, and had no connection with, said mortgages.—*Corbitt v. Reynolds,* 68 Ala. 378; *Elmore v. Simon,* 67 Ala. 526.

ROQUEMORE & HARMON, *contra.*—There was not such uncertainty in the description of the crops conveyed in the mortgage upon which the plaintiff relied as giving him title to the cotton alleged to have been converted, as rendered them void for uncertainty and inadmissible in evidence.—*Cobb v. Daniel,* 105 Ala. 335; *McConnell v. Langdon,* 2 Idaho 892; *Ellis v. Martin,* 60 Ala. 394;

*Seay v. McCormick,* 68 Ala. 549; *Hamilton v. Maas,* 77 Ala. 283.

"Where the mortgage has sufficient certainty to be valid against the mortgagor, it has sufficient certainty to be valid against all persons claiming under him." *Smith v. Fields,* 79 Ala. 335; *Seibold v. Rogers,* 110 Ala. 438; *Wilkinson v. King,* 81 Ala. 156; *Boggs v. Price,* 64 Ala. 514.

McCLELLAN, C. J.—One of the mortgages involved in this case was executed on April 14th, 1894. So far as necessary to the point we will first consider, it is as follows: "Know all men by these presents that I, S. W. Tompkins, for and in consideration of being indebted to R. L. Harmon in the sum of one hundred and fifty-three and 30-100 dollars, for which I have executed my promissory note, which bears even date with this instrument, and due on the first day of October, 1894, and the better to secure the same together with any other amounts the said R. L. Harmon may advance me, in money or otherwise, during the present or next year, have bargained, sold and conveyed, and by these presents do bargain, sell and convey to the said R. L. Harmon, his heirs and assigns, the following described property, to-wit: my entire crop grown the present or next year by me, or under my direction, on my plantation," etc. etc. "in Pike county, Alabama. * * * * And I also transfer to said Harmon all claims for rent or advances for the present or next year." The question raised on this mortgage in the trial court was whether it is void for uncertainty of description of the property intended to be conveyed. It was insisted by the defendants below and is insisted by the appellants here that the description "my entire crop grown the present or next year," is fatally defective for that it covers the crop of one or the other of two years and is wholly uncertain as to which. We do not concur in this view. To the contrary, we think that the mortgage on its face describes and embraces the crop of each and both years. It is given to secure advances to be made, or which might be made during the two years, for, though this is expressed in the same language that is em-

ployed in the description, "the present or next year," there can be no doubt but that it would stand as security for all advances made during either of the years, or, in other words, during the two years. And the language used in the description means no more or other than this: "my entire crop whether grown the present or next year," or, to amplify, but only by paraphrasing, the expression: "my entire crop during the period of the advances, whether grown the present or next year." And this view is strengthened by the terms of the transfer of all claims for rent and advances. That manifestly means all claims of the mortgagor for rent and advances existing during either of the years, and, of course, for both. Even if this construction were less clear on the face of the instrument we should feel in a measure constrained to its adoption by the duty we are under "to lean against the destruction of contracts on the ground of uncertainty;" the rule being that "a contract will not be declared void on that ground, unless, after reading and interpreting it in the light of the circumstances under which it was made, and supplying or rejecting words necessary to carry into effect the reasonable intention of the parties, their intention cannot be fairly collected and effectuated."—*Boykin v. Bank of Mobile,* 72 Ala. 262.

What we have said applies also to the mortgage of April 9th, 1894. The further objections to the introduction of the mortgage of April 9th are also untenable. The plaintiff, of course, had the right to prove his title to all the property alleged to have been converted by the defendants, and it was no objection that as to a part of it he derived title through a mortgage from A. B. and as to the other part his title was under a mortgage from C. D.

The mortgage of J. W. Tompkins embraced all the crop grown by him or under his direction on his plantation. This covered the bale grown by him and his sister, who was a member of his family and subsisted upon the supplies furnished by the mortgagee under the mortgage; and the court did not err in its rulings in respect of the evidence offered as to the conversion of this bale, nor in charging the jury in respect thereto as shown in the bill of exceptions.

[Inman, Smith & Co. v. Schloss.]

The evidence which was received without objection tended to identify the cotton for which receipts were taken in the name of "S. W. Compkins," as cotton raised by S. W. Tompkins, covered by the mortgage ,and stored in the warehouse by him. The court, therefore, properly allowed these warehouse receipts to go to the jury along with all the evidence in the case; and the same is true, of course, in respect of the receipts issued to the mortgagors by their correct names.

We discover no error in the record, and the judgment of the circuit court must be affirmed.

Affirmed.