[McIntyre Lumber & Export Co. v. Jackson Lumber Co.]

# McIntyre Lumber & Export Co., *v.* Jackson Lumber Co.

## *Assumpsit.*

(Decided Feb. 10, 1910.   51 South. 767.)

1. *Contracts; Mutuality.*—A contract for the future delivery of personal property may be void for want of consideration, or for want of mutuality if the contract or any material part thereof is wholly conditioned upon the will or wish of only one of the parties.

2. *Same.*—An agreement to purchase all that a manufacturer desires to sell the purchaser at a certain price or all that the purchaser desires to take at a certain price is void.

3. *Same; Mutuality Implied; Accepted Offer to Sell.*—A proposition to furnish or deliver such articles as may be needed or consumed by a person in a given business during a limited time, when accepted, is binding, since it is an accepted offer to purchase all the articles thus required, during a specified time and from the party who invokes the offer; a mere offer to furnish such as a party might want or desire would be void, however.

4. *Same.*—A contract to purchase the entire output of a mill for a given and reasonable time at a stated price is valid; so likewise is a contract to purchase the entire output of a certain product of a mill at a certain price.

5. *Same; Construction.*—The law is not favorable to the destruction of a contract because not certain, and it will, if feasible, so construe the contract as to carry out the reasonable intention of the parties, if it can be ascertained.

6. *Same; Options.*—If an option is reserved to one party to determine or consummate the agreement as a contract, the law gives a like option to the other, until both are bound, when it becomes a binding contract.

7. *Same.*—Where a defendant agreed to purchase from a manufacturer of lumber all the lumber of a certain description that he could manufacture until he should be notified to discontinue the cutting, and the manufacturer agreed to sell such lumber at a specified price, either party could have terminated the agreement before any lumber of such description had been manufactured, for until that time it was binding on neither, but after the lumber had commenced to be manufactured, it was binding on both.

8. *Appeal and Error; Review; Finding by Court.*—Where a case is tried by the court without the intervention of the jury, the finding of the court becomes the verdict of the court and if supported by the evidence, will not be reviewed on appeal.

9. *Sales; Construction; Quantity; Option to Terminate Contract.*—Where the agreement was that the purchaser would take all of of the lumber of a certain description that the seller could manufac-

[McIntyre Lumber & Export Co. v. Jackson Lumber Co.]

ture at his mill until the purchaser notified the seller to discontinue the cutting, and the seller agreed to sell such lumber at a certain price, the purchaser could terminate the contract at his pleasure, but was required to take all the lumber on hand at that time at the agreed price; the manufacturer was not bound to make any lumber of such description but if he made the lumber he was bound to sell it to the purchaser at the agreed price.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by Jackson Lumber Company against the McIntyre Lumber & Export Company. Judgment for the plaintiff and defendant appeals. Affirmed.

FITTS & LEIGH, for appellant.—The contract was wanting in mutuality.—*Hazlehurst L. & S. Co. v. Mercantile L. & S. Co.,* 166 Fed. 191; *Comer v. Bankhead,* 70 Ala. 144; *Evans v. C. S. S. & R. Co,* 78 Ala. 341; *Higbee v. Rust,* 103 Am. St. Rep. 204; *Morrow v. Southern Ex. Co.,* 28 S. E. 998; *Crane v. Crane,* 45 C. C. A. 96; *Hoffman v. Maffioli,* 47 L. R. A. 427. If this cause had been submitted to the jury, the court would have been compelled to give the affirmative charge for the defendant, and hence, the court was in error in its judgment. —*Buist v. Guice,* 96 Ala. 265, and cases there cited; *Griffin v. Oglctree,* 114 Ala. 343.

ROACH & CHAMBERLAIN, for appellee.—The contract was not wanting in mutuality, but was of that class of contract that becomes binding when either party takes advantage of the option given in it, and begins to do the thing for which the contract calls.—*Weffel v. Stillman,* 151 Ala. 270; *Sheffield F. Co. v. Hull C. & C. Co.,* 101 Ala. 476; Parsons on Contract, 477, et seq. and notes; *Wilson v. Sun Mut. Ins. Co.,* 45 N. Y. 45; *Atlee v. Bartholemew,* 5 Am. St. 103 N. 113; *Cherry v. Smith,* 39 Am. Dec. 150 N. Y. 152; *White v. Baxter,* 71 N. Y. 254; *LaMorlaux v. Gould,* 7 N. Y. 349.

MAYFIELD, J.—Appellee, a company engaged in the manufacture and sale of lumber, including cross-ties, sued appellant, a lumber company engaged in the purchase, sale, and export of lumber, including cross-ties, for a breach of an alleged contract. Issue was joined on count 3 as last amended, and counts 4 and 5 added by amendment.

The third count as last amended was as follows: "(3) The plaintiff claims of the defendants the further sum of one hundred and six and 39/100 dollars ($106.39) and the interest thereon, damages, for the breach of an agreement entered into by them on, to wit, July 20th, 1907, in substance as follows: The defendants agreed to purchase all of the heart ties 5 in. x 8 in. x 8 ft., meaning thereby 5 inches thick by 8 inches wide by 8 feet long, that the plaintiffs manufactured at their mill, until the defendants notified the plaintiffs to discontinue the cutting, the plaintiffs to load the ties on the cars on the railroad near the plaintiffs' mill, at and for the price of fifteen dollars ($15.00) per thousand feet f. o. b. cars; and plaintiffs agreed to sell to the defendants the said ties at the price and on the terms above specified. And the plaintiffs aver that they made, to wit, 7,093 feet of such ties for the defendants, and had the ties ready to load on cars, whereupon the defendants instructed, or advised, plaintiffs that they would take no more ties from the plaintiffs, and although the plaintiffs continued to have the said ties so manufactured, ready for loading, the defendants refused to accept the said ties, and to pay for same."

The other counts were practically the same as this, except that they averred that the ties were ready to be delivered on board the cars, and that defendant refused to accept the ties or to allow plaintiff to load and deliver, etc.

[McIntyre Lumber & Export Co. v. Jackson Lumber Co.]

It is first insisted by appellant that the counts do not state a cause of action, in that they do not show any mutual agreement, binding alike on both parties, and that the alleged contract is so vague and indefinite as to be wholly void for uncertainty. It is true that a contract for the future delivery of personal property may be void because there is no consideration or mutuality, if the contract or any material part of it is wholly conditioned upon the will, wish, or want of only one of the parties; but an accepted offer to furnish or deliver such articles as may be needed or consumed by a person in a given business, during a limited time, is binding, because it contains the accepted offer to purchase all the articles thus required during this time, and from the party who invokes the offer, but a mere offer to furnish such as a party might want or desire would be void. A contract to purchase the entire output of a mill or plant, for a given and reasonable time, at a given price, is valid, and so, likewise, is a contract to purchase the entire output of a certain product of a plant, such as all the heart lumber, at a certain price; but an agreement to purchase all that the manufacturer desires to sell to the purchaser, at a certain price, or all that the purchaser desires to take, at a certain price, would be void. The mere fact that the amount of the product is uncertain or depends upon the will or efforts of the manufacturer, does not render the contract void. It is the fact that whether he will be bound depends upon his will or caprice that renders the contract void. All contracts for the entire output of a given plant or business, of course, as to amount produced, depend more or less upon the will and efforts of the manufacturer; likewise does the amount of the purchase of all the materials a party may need in his business depend in a measure upon his will and efforts.

The contract in question was nothing more nor less than an agreement on the part of the defendant to purchase all of the cross-ties of a given kind manufactured by the plaintiff, who was engaged in the business of manufacturing lumber, at a given price, until the purchaser ordered the manufacturer to make no more. It is true that the purchaser could terminate the contract at its pleasure, but it was required, as a part of the contract, to take all those on hand at that time, at the agreed price, and on the conditions fixed by the contract. It is likewise true that the manufacturer might have been unable to manufacturer any ties of this kind, or it may have had the choice not to manufacture them if it willed, but, if it did manufacture them, then it was to sell to this purchaser and to no one else, and at this price and no other. After it had manufactured 1 or 1,000 of these ties, it was bound by this contract to sell them to defendant and at this price, and the purchaser was bound to take them at this price and under the conditions of the contract. There was nothing indefinite or uncertain, then. The contract was mutually binding on the parties, and was as definite and certain as any contract could be. All contracts or agreements of this nature are indefinite and uncertain in their incipiency, but if they are capable of being made certain, and are made certain by words or deeds of the parties, they are thereafter binding on both parties. There are many contracts of this kind—options, contracts to purchase the output or products of certain plants, etc.—where the quantity of the purchase is in its very nature uncertain until the article is produced; but, after this term is made certain, the contract is as binding as any other. If plaintiff had sold the ties in question to a third party, it would have been liable to the defendant as for a breach of this contract. If it

[McIntyre Lumber & Export Co. v. Jackson Lumber Co.]

had refused to sell or deliver to the defendant at this agreed price it would have been liable as for a breach of the contract. So it is a mistake to say that plaintiff was not bound by the contract. It was not bound to manufacture any given number of these particular ties, and probably not any; but if it did manufacture them it was bound to sell them to this defendant at this price. This was the contract, and it was valid. Of course the defendant could not have compelled the plaintiff to manufacture these particular ties; that was not the contract. The contract was that if it did manufacture such ties it would sell them to defendant at this price. After it had manufactured the particular kind of ties which the defendant offered to purchase of it, if it would make them, and to purchase all of that kind which it would manufacture, until defendant notified it to manufacture no more, it would be unconscionable to allow the defendant to say, "I will not take the ties because I could not have compelled you to manufacture them." The plaintiff had made certain that which was at first uncertain. The defendant had caused the plaintiff to become bound, and it cannot now escape liability, on the ground that the plaintiff could have avoided being bound by declining to manufacture the ties.

The Supreme Court of the United States, in the case of *Storm v. United States,* 94 U. S. 76, 24 L. Ed. 42, speaking of a written contract something like the one in question, uses this language: "Where the defendant has actually received the consideration of a written agreement, it is no answer to an action brought against him for a breach of his covenants in the same to say that the agreement did not bind the plaintiff to perform the promises on his part therein contained, provided it appears that the promises in question have in fact been performed in good faith, and without prejudice to the

defendant.—*Morton v. Burn,* 7 A. Ad. & El. 19, 34 E. C. L. 18. Agreements are frequently made which are not, in a certain sense, binding on both sides at the time when executed, and in which the whole duty to be performed rests principally with one of the contracting parties. * * * Cases often arise where the agreement consists of mutual promises, the one promise being the consideration for the other; and it has never been seriously questioned that such an agreement is valid, and that the parties are bound to fulfill their respective obligations."

This court, in *Sheffield Co. v. Hull Co.,* 101 Ala. 477, 14 South. 672, in construing a contract to manufacture and sell coke, which, like the contract in this case in its inception, was optional and unilaterable, said: "The evidence is clear and free from conflict to the proof of the efforts of the coke company to induce the building of additional ovens and the manufacture of the requisite coke by the operators, as was contemplated in the agreement, and of the entire success of these efforts. Thereby the condition of plaintiff's absolute obligation to sell and deliver the coke was met and removed, and the unilateral agreement, not binding on either party because in terms not binding on one, was converted into a mutually obligatory contract."

The law does not favor, but leans against the destruction of contracts because of uncertainty; it will, if feasible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained.—*Boykin v. Bank,* 72 Ala. 262, 47 Am. Rep. 408. If by the terms of an agreement an option is reserved to one party, to determine it, or to consummate it to a contract, the law will give the like option to the other, until both are bound; then it becomes a binding contract.—*Eskridge v. Glover,* 5 Stew. & P. 264, 26 Am.

Dec. 344. This was the case here; either party could have terminated this agreement or option, before the plaintiff had manufactured any of the ties; until then it was binding on neither, after that it was binding on both. All the cases cited and relied upon by appellant are clearly distinguishable from the case at bar on the grounds stated above. On the undisputed evidence in the case the plaintiff was entitled to recover.

The case was tried by the court without the intervention of a jury; the finding of the court stands for the verdict of a jury. There was evidence to support the finding of the court as to the amount of the judgment. While there may have been evidence to support judgment for a less amount, we cannot revise the findings or judgment of the court, on this appeal, because they are supported by the evidence.

We are not prepared to say that there is any reversible error, and the judgment of the lower court is affirmed.

Affirmed.

ANDERSON, McCLELLAN, and SAYRE, JJ., concur.