# Naylor Lumber Co. *v.* American Tie & Timber Co.

### Assumpsit.

(Decided November 16, 1916. 73 South. 12.)

Sales; Requisites; Terms of Offer.—A contract under which defendant agreed to take at a stipulated price as many cross ties of certain dimensions as plaintiff could accumulate at M. in 12 months, being an executory contract and void for uncertainty, the number of ties not being stated, and amounting to no more than an offer to buy all ties delivered by plaintiff at M., subject to inspection before acceptance, became binding on defendant only when there was an appropriation of a definite number of ties to the contract by such delivery, and until the ties were so assembled, either party could withdraw from the undertaking without legal responsibility to the other therefor.

APPEAL from Mobile Law and Equity Court.
Heard before Hon. SAFFOLD BERNEY.

Assumpsit by the Naylor Lumber Company against the American Tie & Timber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Count 14 sufficiently appears. Count 15 sets out the contract, and alleges a compliance therewith from February 19, 1913, until March 19, 1913, at the date of the repudiation thereof. It also alleges that during that period defendant complied with all the provisions of the contract on its part, and recognized the same as binding. Plaintiff says that at the time of the execution of said contract it was then and there understood and agreed by and between plaintiff and defendant that the ties stipulated and named in said contract should be furnished by plaintiff to defendant by plaintiff's going into the market in the Moss Point territory along the lines of railway adjoining Moss Point, and contiguous thereto, and purchasing crossties from various tie manufacturers and delivering the same to defendant; that it was then and there within the contemplation of the parties to said contract that the said ties stipulated and named in said written contract should be procured by plaintiff and furnished to defendant by means of certain subcontracts to be entered into by plaintiff and said tie manufacturers in said territory; and that defendant should finance said transaction by paying drafts for the actual cost of said ties in the manner set forth in said contract. And plaintiff says that after the execution of said written contract and during the entire life of the same, plaintiff was ready, able, and willing to accumulate at Moss Point, Miss., under and pursuant to said contract a further large number, to wit, 400,000 ties of the specified quality and dimension named, and that said cross-ties were then and there actually manufactured by various tie manufacturers under and by virtue of said aforesaid subcontracts, which said subcontracts plaintiff had then and there actually entered into with said manufacturers, and said manufacturers stood ready, able, and willing to deliver said ties to the plaintiff during the life of the aforesaid written contract; that during the life of said contract plaintiff many times notified defendant that it was ready, able, and willing to furnish said cross-ties; that said cross-ties were then and there located in the territory accessible to said town of Moss Point by rail and water, and plaintiff was then and there ready, able, and willing to transport said ties to said town of Moss Point, and could have procured transportation facilities for such delivery, but that on said 19th day of March,

1913, defendant notified plaintiff that it would no longer be bound by said contract, and on said date and during the entire time covered by the balance of said contract has wholly refused and neglected to accept delivery of said ties or pay for the same, and plaintiff says that by defendant's refusal to accept and pay for the 400,000 ties, plaintiff was damaged as aforesaid.

CLARK, BROWN & HOWARD, for appellant.  WILLIAM B. INGE, for appellee.

SOMERVILLE, J.—The original complaint in this case was for breach of a contract by which defendant agreed to take from plaintiff at a stipulated price as many heart cross-ties of certain dimensions as plaintiff could accumulate at Moss Point for 12 months after date.

This contract is set out in full in the report of a former appeal of this case (*Am. Tie, etc., Co. v. Naylor Lbr. Co.*, 190 Ala. 319, 67 South. 246), wherein it was held that a complaint based thereon did not state a cause of action, and could not support a judgment, because the contract was void for uncertainty as to the number of ties to be delivered.  From that conclusion we see no reason for now departing.

It was further declared on that appeal that if the complaint had alleged that prior to the time defendant notified plaintiff it would not further perform the contract, plaintiff had accumulated at Moss Point, under and pursuant to the contract, a certain number of cross-ties of the specified quality and dimensions, a substantial cause of action would have been stated.  The complaint has now been amended by the addition of several new counts.

Count 14, after reciting compliance with the contract by both parties for several months, and alleging plaintiff's readiness to continue to do so on and. after defendant's repudiation of the contract on March 19, 1913, adds the following:  "And the plaintiff says that at the time of the execution of said contract it was then and there understood and agreed by and between the plaintiff and the defendant that the ties stipulated and named in said contract should be furnished by the plaintiff to the defendant by the plaintiff's going into the market in the Moss Point territory along the lines of railway adjoining Moss Point and contiguous thereto and purchasing cross-ties from various tie manufacturers

and delivering the same to the defendant; that it was then and there within the contemplation of the parties to said contract that the said ties should be procured by the plaintiff and furnished to the defendant by means of certain subcontracts to be entered into by the plaintiff and said tie manufacturers in said territory, and that defendants should finance said transaction by paying drafts for the actual cost of said ties in the manner set forth in said contract; that at the time of the receipt of said notice the defendant would no longer comply with its said contract, the plaintiff by means of and through said subcontracts, which it had theretofore actually entered into with said tie manufacturers, stood ready, able, and willing to deliver to the defendant a large number, to wit, 100,000 cross-ties, of the specified quality and dimensions set forth in said contract, which said ties had been actually manufactured under said subcontracts; that the said cross-ties were then and there located in said territory, and there was then and there accessible to the plaintiff sufficient and adequate transportation facilities by means of which the plaintiff could have promptly and within a reasonable time have delivered said ties to the defendant at Moss Point under and pursuant to the aforesaid contract, and the plaintiff then and there notified the defendant of its readiness and willingness and of its ability to furnish and deliver to the said defendant the aforesaid 100,000 ties at Moss Point, but that on the 19th day of March, 1913, the said defendant then and there refused to accept and to pay for the said 100,000 ties. And the plaintiff says that by the defendant's refusal to accept and pay for the said 100,000 ties, the plaintiff was damaged as aforesaid. Wherefore this suit."

The theory of this count is that, if plaintiff, pursuant to an understanding or arrangement with defendant, went into the market and contracted with tie manufacturers for definite quantities of ties, to be appropriated to his contract with defendant, and if these ties were actually manufactured and made ready and available for assembly and delivery at Moss Point—though not actually accumulated there—this was such a performance of the contract on his part, before notice of its repudiation by defendant, as to fasten on defendants a corresponding obligation to accept and pay for such ties; and that such repudiation before their assembly at Moss Point, the place of delivery, excused plaintiff from the duty of actually assembling and tendering them to defendant at that place.

[State v. Roden Coal Co.]

We have seen that, as an executory contract, the written agreement of sale and purchase was void and unenforceable—not for any mere ambiguity which might be explained by parol evidence, but for the inherent and incurable uncertainty of its subject-matter. It amounted therefore to no more than an offer to buy all the ties delivered by plaintiff at Moss Point, subject to the usual inspection before acceptance. This offer became binding on defendant only when, and to the extent that, plaintiff executed the general agreement by assembling a definite quantity of ties for defendant's inspection and acceptance at the designated place. Until ties were so assembled—there being on appropriation of them to the contract—plaintiff was not bound for their delivery, and defendant was not bound for their acceptance, and either party could withdraw from the undertaking without legal responsibility to the other therefor.

We think the trial court did not err in sustaining the demurrer to the fourteenth and fifteenth counts, some of the grounds of which aptly point out the defects noted.

We do not overlook the arguments and citations of authority found in the brief for appellant, but will merely remark that, though ingenious and plausible, they do not fit the instant case.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.