(80 South. 394)

SCOTT v. MORAGUES LUMBER CO.
(1 Div. 58.)

(Supreme Court of Alabama. Dec. 19, 1918.)

1. CONTRACTS ⬤⟶10(1)—AGREEMENT TO CHARTER—MUTUALITY OF OBLIGATION.

Defendant's agreement to charter vessel to plaintiff, if he, defendant, should buy her, being then in negotiations, was not void for want of consideration or mutuality of obligation as conditioned on defendant's will.

2. SHIPPING ⬤⟶36—CONTRACT FOR CHARTER—CONTINUING OFFER.

Where defendant offered to charter to plaintiff a vessel for which he was in negotiations, if he should purchase her, proposal constituted continuing offer, which remained open, but imposed no obligation on either party, until within reasonable time accepted, rejected, or withdrawn.

3. SHIPPING ⬤⟶36—CONTRACT TO CHARTER—TIME FOR PERFORMANCE.

Defendant's offer to charter to plaintiff a vessel for which he was negotiating was converted into binding contract by acceptance, to be performed, if not otherwise stipulated, within a reasonable time; the promise on either hand constituting the consideration of promise on other.

4. SHIPPING ⬤⟶58(2)—CONTRACT—ACTION—PLEADING.

In action for defendant's breach of agreement to charter to plaintiff vessel for which he

was negotiating, defendant's purchase of vessel having been condition precedent to existence of binding contract, it was necessary for plaintiff to allege such purchase.

**5. SHIPPING ⬤⟿58(2)—CONTRACT—PLEADING —COMMUNICATION OF ACCEPTANCE.**

Where defendant offered to charter to plaintiff a vessel for which he was negotiating, and action was brought for breach, communication of acceptance of the offer was sufficiently alleged by a general allegation of acceptance.

**6. SHIPPING ⬤⟿36—AGREEMENT TO CHARTER — DESIGNATION OF PORT OF DELIVERY — CONDITION PRECEDENT.**

Designation of port of delivery for vessel *held* not condition precedent to defendant's liability on agreement to charter to plaintiff a vessel for which he was negotiating, defendant's offer becoming binding on its acceptance.

**7. SHIPPING ⬤⟿51—AGREEMENT TO CHARTER —FAILURE TO NOTIFY OF PURCHASE OF VESSEL.**

It was defendant's duty, on purchase of vessel for which he was negotiating, and which he had agreed to charter to plaintiff if he should purchase, plaintiff having already accepted offer, to communicate fact of purchase to plaintiff; and, where he failed, plaintiff was excused by his default for any failure to designate port of delivery, being able, ready, and willing to perform.

**8. SHIPPING ⬤⟿36—AGREEMENT TO CHARTER —UNCERTAINTY.**

Agreement between defendant and plaintiff to charter vessel to plaintiff if it was purchased *held* not void for uncertainty, contemplated charter being for transportation from any port in Gulf of Mexico to Montevideo or Buenos Aires, on account of possible difference between freight rates from Gulf ports to such South American ports.

**9. SHIPPING ⬤⟿58(1)—AGREEMENT TO CHARTER—BREACH—RIGHT TO RECOVER.**

In action for breach of agreement to charter to plaintiff vessel for which defendant was negotiating, general charge for defendant, asked on account of uncertainty as to freight rates between charter ports, *held* properly refused, there being evidence to prove such rates, while in any event plaintiff was entitled to nominal damages.

**10. SHIPPING ⬤⟿58(1)—AGREEMENT TO CHARTER—INSTRUCTIONS—MISLEADING CHARACTER.**

In action for breach of agreement to charter to plaintiff a vessel for which defendant was negotiating, charges requested by defendant *held* properly refused on account of their use of word "Amazon"; plaintiff having contracted for vessel answering description of Amazon, but defendant having declined to disclose vessel's name.

**11. SHIPPING ⬤⟿58(3)—AGREEMENT TO CHARTER—BREACH—DAMAGE—RECOVERY.**

Plaintiff, which had agreed to charter vessel for which defendant was negotiating, was entitled to profit of its bargain, though it had at time no cargo ready to ship, and did not sell

or offer for sale its charter party; defendant being liable for value of such contract to plaintiff if his breach destroyed value.

**12. SHIPPING ⬤⟿58(3)—BREACH OF AGREEMENT TO CHARTER—MEASURE OF DAMAGES.**

It if had been made to appear that no other reasonably satisfactory transportation could have been secured by plaintiff, its measure of damages for defendant's breach of agreement to charter vessel would have been difference between value of cargo at port of shipment, and its value at port of destination, less cost of transportation.

**13. SHIPPING ⬤⟿58(3) — BREACH OF AGREEMENT TO CHARTER—MEASURE OF DAMAGES.**

If market afforded shipping other than vessel lost to plaintiff by defendant's breach of agreement to charter, measure of plaintiff's damages is difference between contract and market price of transportation contracted for.

**14. APPEAL AND ERROR ⬤⟿216(7)—RESERVATION OF GROUNDS OF REVIEW—REQUEST FOR INSTRUCTION.**

If, in view of evidence, trial court should have stated to jury particular rule as to damages, its omission so to do should have been pointedly called to its attention by defendant by request for appropriate instruction, and request for general charge by defendant did not raise question.

**15. WITNESSES ⬤⟿236(1) — EXAMINATION — QUESTIONS CONSTITUTING ARGUMENTS.**

In action for breach of agreement to charter vessel, objections to questions to stockholder and officer of plaintiff corporation as to whether in certain conditions he would have exercised option to cancel charter, etc., *held* properly sustained, being mere arguments.

Appeal from Circuit Court, Mobile County; Norvell R. Leigh, Jr., Judge.

Suit by the Moragues Lumber Company, a corporation, against J. M. Scott, for damages for breach of an agreement of charter party. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 2 of the complaint as amended is as follows:

The plaintiff claims of the defendant $13,000 as damages from breach of an agreement entered into between the plaintiff and the defendant on the 27th day of June, 1917, consisting of an offer by the defendant that, subject to his buying a certain American vessel, 15 years old, which he was then figuring on and which was of about 1,050 tons and then due in Chile, he would charter said vessel to the plaintiff for the transportation of a cargo of lumber from any port in the Gulf of Mexico to Montevideo or Buenos Aires, for the freight of $65 per thousand feet of lumber, freight to be prepaid, free of discount and of insurance, and the vessel to be furnished to the plaintiff within a reasonable time after its purchase by the defendant, which said offer was accepted by the plaintiff, and the plaintiff avers that although the defendant purchased said vessel, and although the plaintiff was at all times ready, will-

---

ing, and able to comply with all the provisions of said contract on its part, the defendant without notifying the plaintiff of said purchase, and before said vessel was delivered to him, chartered said vessel to a third person, and thereby rendered himself unable to comply with the said contract.

The following are the charges refused to the defendant:

(4) If you are reasonably satisfied from the evidence that the plaintiff did not buy or contract for a cargo for the "Amazon," that plaintiff did not have a cargo for said vessel, and that plaintiff did not sell or offer for sale or receive any offer for the alleged charter of said vessel, then the damages with reference to both the probable use of said vessel and the probable sale of alleged charter would be speculative and could not be recovered in this case.

(7) If you are reasonably satisfied from the evidence that the plaintiff had not made any arrangements to supply a cargo for the "Amazon," that plaintiff had no cargo for said vessel, that plaintiff did not try to sell said alleged charter, and had no offers therefor, then the damages with reference to the probable or possible use of said vessel and the damages with reference to the probable or possible sale of said alleged contract or charter are purely speculative and cannot be recovered in this case.

The following are the assignments of error referred to in the opinion:

(7) The court erred in sustaining plaintiff's objection to the following question propounded by the defendant to the witness Marty: "Suppose that she arrived here on the 26th day of November after the rates had been put down for $51, would you have canceled that charter, or would you have taken the boat?"

(8) The court erred in sustaining objection to the following question to the same witness: "Suppose on the 1st day of November, 1917, the vessel had not yet arrived and the shipping board had put the freight down to $50 or $55 a thousand, would you have exercised your option to cancel that charter, or would you have kept the charter?"

Rickarby & Austill and Webb, McAlpine & Grove, all of Mobile, for appellant.

Harry T. Smith & Caffey and Bart B. Chamberlain, all of Mobile, for appellee.

SAYRE, J. This case went to the jury on counts 2 and 3 as last amended. The report of the case will show count 2. Count 3 differed only in its allegation of defendant's breach, the same being alleged in this count in this language: The defendant wholly failed and refused to furnish said vessel as he had contracted to do. Appellant, against whom judgment was rendered in the trial court, insists that various of its grounds of demurrer to the complaint—counts 1 and 2—should have been sustained.

[1] It is said, in the first place, that the alleged contract between the parties was conditioned upon the will of appellant, defendant, and was therefore void for want of consideration or mutuality of obligation. A valid contract may be conditioned upon the happening of an event, even though the event may depend upon the will of the party who afterwards seeks to avoid its obligation. This principle is illustrated in McIntyre Lumber Co. v. Jackson Lumber Co., 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66. Appellant was not bound to purchase the vessel; but, when he did, the offer—or the contract, if the offer had been accepted—thereafter remained as if this condition had never been stipulated, its mutuality or other necessary incidents of obligation depending upon its other provisions and the action of the parties thereunder. Davis v. Williams, 121 Ala. 546, 25 South. 704; 3 Page on Contracts, § 1358. See, also, Jones v. Lanier, 73 South. 535.[1] Appellant, in this connection, lays stress upon Dorsey v. Packwood, 12 How. 126, 13 L. Ed. 921, the headnote of which is quoted in the brief. The court in that case found, and deemed it proper to state, more than one other reason for denying the relief sought by complainant Dorsey, but in that part of the opinion most nearly touching upon the question here at issue it summed up as follows:

"The agreement by Packwood to convey one-half of the land purchased and paid for by himself, in consideration of a payment 'from the profits of the plantation,' which equally belonged to himself, was but the promise of a gift, a nude pact which equity will not enforce."

This leaves the case without weight in the present controversy.

[2-5] Appellant's demurrer also took the point that the complaint failed to allege that he purchased the vessel within a reasonable time after he made his conditional offer to charter it to appellee. The complaint does not make it appear how long appellant's offer was to remain open. It is suggested that it cannot be presumed that appellant's offer was to remain open indefinitely, or that it was to wait indefinitely upon his purchase of the vessel the parties had in mind, or that after that event, upon which the offer was conditioned, appellee might delay its acceptance indefinitely, and it is argued that the complaint should have excluded the conclusion that either the purchase or appellee's acceptance were delayed beyond a reasonable time. For aught appearing in the complaint, the element of time in this offer or option may have been limited to its express terms; but, if not, then appellant's proposal constituted a continuing offer which remained open, but imposing no obligation on either party, until within a reasonable time it was accepted, rejected, or withdrawn. 6 R. C. L. p. 603, §§ 25, 26; 1 Page, § 38. The effect of appellee's acceptance, if communicated while the offer was yet open, was to convert it into a binding contract. 6 R. C. L. p. 605, § 27. In substance, it is alleged in the complaint

[1] 198 Ala. 363.

that appellant's offer was accepted; that appellant purchased the vessel; that appellee was able, ready, and willing to perform the contract on its part; but that appellant disabled himself, or failed and refused to perform on his part. From the order in which the facts are alleged it is to be inferred that appellee accepted appellant's offer before the latter purchased the vessel, and there is no ground of demurrer questioning the sufficiency of the complaint to that effect. Thereupon the offer was converted into a binding contract to be performed, if not otherwise stipulated, within a reasonable time; the promise on either hand constituting the consideration of the promise on the other. Appellant's purchase of the vessel was a condition precedent to the existence or a binding contract, it is true; but that was alleged, as it was necessary that it should be. 13 C. J. p. 724, § 847, citing McCormick v. Badham, 191 Ala. 339, 67 South. 609; Long v. Addix, 184 Ala. 236, 63 South. 982; Flouss v. Eureka Co., 80 Ala. 30. And so with respect to appellee's acceptance of the offer. It was necessary that appellee communicate its acceptance to appellant. 1 Page, § 43. But this communication was a part of the acceptance and was covered by the general allegation of acceptance.

[6, 7] Further, it is said the complaint failed to allege that appellee designated a port —within the limits specified in the offer— to which the vessel should be delivered. Where parties contract for a sale of personalty, the buyer undertaking to designate a place of delivery, and this without more constituting the contract, such designation is a condition precedent to the obligation of the seller, and must be made and notice thereof given. But in the peculiar circumstances of this case as they appear in the complaint, the designation of a port of delivery was not a condition precedent to appellant's liability; for, as we have stated on authority, appellant's offer became a binding contract upon its acceptance by appellee. It was appellant's duty, upon his purchase of the vessel, appellee having already accepted the offer, to communicate the fact of the purchase to appellee. The complaint alleged appellant's default as to that, and, in effect, properly assigned that default as an excuse for its failure to designate a port of delivery (McLendon v. Godfrey, 3 Ala. 181), alleging besides that it had been able, ready, and willing to perform its part of the contract. 3 Mich. Ency. Dig. p. 388, § 236. This was enough. It seems rather clear that there was no occasion or necessity to name the port of loading until the charterer had notice that the vessel had been bought and was ready for delivery, nor was any useful purpose to be served by naming a port, when, as alleged, appellant had disabled himself to perform by chartering the vessel to another person, as alleged in the second count, or had refused to perform, as alleged in the third count.

[8] The argument for the proposition that the contract alleged in the complaint was void for uncertainty appears to be based upon the consideration that there are a number of Gulf ports, the rates for the carriage of freight from them to Montevideo or Buenos Aires may differ among them, and hence no breach of the contract alleged could be assigned which could be compensated by any criterion of damages furnished by the contract itself. Christie, Lowe & Heyworth v. Patton, 148 Ala. 324, 42 South. 614, and Pulliam v. Schimpf, 109 Ala. 179, 19 South. 428, are cited. In passing upon the demurrer by which appellant raised this question, the court was not required, nor could be expected, to know whether freight rates from different Gulf ports differed. Assuming for the argument that there were different rates and that damages were properly assessable on the basis of the lowest rate, that rate was capable of proof, and, the complaint being proved in other respects, appellee was entitled to substantial damages.

[9] Much the same line of argument is followed with reference to the general charge which the court refused to appellant. There are two sufficient answers: (1) There was evidence to prove freight rates from "Gulf ports" to the ports of destination named in the complaint and in the contract offered in evidence, and the jury may have been able to find that these rates were uniform, did not differ among different ports, and (2) in any event, as to that, appellee was entitled to recover nominal damages. In either case the general charge was well refused.

[10, 11] The refusal of charges 4 and 7, requested by appellant, might very well be justified on the use of the word "Amazon." Appellee, on its theory of the evidence, contracted for a vessel answering the description of the Amazon in every substantial particular, and the jury were abundantly authorized to find that appellant, when making his offer, had in mind no other vessel than the Amazon. Still, appellant at the time declined to disclose the name of the vessel, and, notwithstanding there may have been a valid contract binding appellant to carry a cargo by the Amazon, appellee did not contract for the name or with reference to the name, and the charges in question may very well have led the jury to the conclusion that appellee could not recover unless it contracted for a vessel known to it by the name of "Amazon." This aspect of the charges needed particularly to be guarded against in view of appellant's contention that he had in mind no particular vessel at the time of his offer. But the refusal of these charges may be justified

also on the broader ground that appellee was entitled to the profit of its bargain even though it had at the time thereof no cargo ready to ship nor did sell or offer for sale its charter party. Such contracts have value, and 'if, as appellee's evidence went to show, appellant's breach of contract destroyed its value to appellee, no reason is perceived why appellant should not account for that value.

[12-14] Appellant contends that, since no other transportation was available, the correct measure of damages should have been found in the difference between the value of the cargo his vessel was chartered to carry at the port of shipment and its value at the port of destination, less the cost of transportation, citing Parker v. McCaldin, 3 Misc. Rep. 14, 22 N. Y. Supp. 359. If it had been made to appear beyond dispute that no other reasonably satisfactory transportation could be secured, the measure of damages contended for would be correct. Parker v. McCaldin, supra. But we are unable to say that the evidence was clear and undisputed to the effect suggested. That seems to have been a question for jury decision, and, in the event it was found that the market afforded other shipping, the measure of damages laid down by the trial court, in case of a verdict for plaintiff, was correct, to wit, the difference between the contract and the market prices of the transportation contracted for. But whether the rule of Parker v. McCaldin would have operated advantageously to appellant or appellee does not appear. In that case the rule which measures damages by the difference in cargo values was invoked by the charterer; and, moreover, we cannot find in the record that this question was reserved for review. It is argued in connection with the general charge refused to appellant; but, if appellee was entitled to a verdict, its damages were due to be assessed according to one rule or the other, and if it be true that, in view of the evidence, the court should have stated to the jury the rule that measures damages by the difference in cargo values, that omission should have been pointedly called to its attention by a request for appropriate instruction. The general charge did not suffice to raise the question.

[15] The objections to the questions put to the witness Marty and made the subject of the seventh and eighth assignments of error were properly sustained. The rights of appellee, a corporation, could not have been affected by what the witness might have done in a contingency that did not arise even though the witness was a stockholder and officer of the corporation. These questions were, in truth, mere arguments out of time and were not properly addressed to a witness.

We have thus considered all assignments of error insisted upon in appellant's brief without finding cause for reversal.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.