## ESKRIDGE *vs* GLOVER.

1. An *incomplete* contract or agreement, which one of the parties has the option of completing at a particular day, raises a a mutual right of rescission, in the other party, at any time, before the ratification by the first.

2. Thus, where A proposed to exchange horses with B, and and give B a specific amount, as difference, which proposition B reserved the privilege of determining upon, by a certain day; and before that day transpired, A gave notice to B, that he would not confirm the offered contract—it was held, that no action lay in favor of B, to recover the difference agreed to be paid by A.

This was an action of assumpsit, prosecuted in Greene County Court, by Burdet Eskridge, against Williamson Glover; and was brought to recover of the defendant, damages, for the non-performance of promises by the defendant, whereby, in exchange of horses, the defendant undertook to pay to the plaintiff the sum of fifty-five dollars.

The declaration contained several counts, one of which specially set forth, that the plaintiff, at the instance and request of the defendant, did exchange a certain mare, held and owned by the plaintiff, for for a horse, then and there the property of the defendant; that, by the agreement between the defendant and himself, in relation to the said exchange, it was understood and agreed, that if the horse of the defendant, upon trial performed well on the journey, the exchange should be complete, on the defendant executing to the plaintiff, a note, for the sum of fifty-

five dollars, payable at twelve months; which defendant should, in a few days execute, on one M'Grew, calling to receive it. That it was further agreed, that if the horse did not answer, on trial, the plaintiff was to return him in the course of three days, and the contract should be annulled; and it was further stipulated, that in as much as the mare was diseased, if, within the time fixed for the return of the horse, she should die, the loss should be borne by the defendant. And the plaintiff averred, that the horse did perform well, and pleased him, and he determined to continue his journey, and confirm the exchange; that the said mare did not die within the three days; and thereof gave defendant notice.— But, that the defendant, on being urged to confirm said exchange, and execute his note, agreeably to the contract, then and there refused. By means, &c., the defendant became liable, &c.

On issue, (the record did not show the plea,) judgment was entered for the plaintiff; from which judgment defendant took a bill of exceptions, and by writ of error, removed the cause into the Circuit Court of Greene County; where the judgment was reversed and the cause remanded. And, on that decision the plaintiff took a writ of error here.

The evidence, as set forth by the bill of exceptions, taken to the opinion of the judge of the County Court, was—that Eskridge, being on a journey to Tennessee, and his mare unable to travel, in consequence of a supposed founder, stopped at defendant's house: that, a conversation taking place, in relation to a sale or loan of a horse, from the defendant to plain-

tiff, defendant agreed to let plaintiff have a horse to ride ten miles, to a place where one could be procured by plaintiff; at the same time proposing to exchange a horse for plaintiff's mare, and give fifty dollars as difference, in the event the mare did not die in a short time. That it was ultimately agreed, between plaintiff and defendant, that plaintiff should take defendant's horse, and if he liked him, was to take him, with the fifty dollars difference; but otherwise, to return him.— That soon after plaintiff left defendant's house, defendant pursued him, and informed plaintiff that the mare was about to die, and he would not stand to the trade.

It was further proved, that a short time before defendant overtook plaintiff, the latter observed that, "the horse did not suit him, and he would not trade:" when, however, defendant overtook plaintiff, he said, that "the time was not out during which he was privileged to say whether he would trade;" that "the option was with him," and that defendant "reserved no right of rescission."

The defendant, upon this testimony, requested the Court to charge the jury, that defendant had a right to rescind, at any time before the contract was confirmed by the plaintiff; or before the time expired, during which plaintiff had a right to return the horse: that the obligation must be mutual. The Court refused to give these instructions; and charged the jury, that one party might reserve the the right to rescind the contract, upon some future contingency, and the other not: that if the jury believed that plaintiff, from the terms of the contract,

and the contract had been in part executed, that plaintiff was entitled to recover the fifty dollars—was to have the only privilege, of confirming or not, although defendant proposed à rescission, before the time expired, during which plaintiff had the privilege to return the horse. To all which defendant excepted.

*Stewart*, for the plaintiff in error—
*Vandegraaff*, contra.

SAFFOLD, J.—The present plaintiff brought assumpsit, in Greene County Court, to recover fifty dollars, which he alleged to be due him, from Glover, as the boot, or difference, in a contract of exchange of horses.

There, a verdict was found for the plaintiff. On that trial, Glover took a bill of exceptions to the opinion of the Court, and prosecuted a writ of error to the Circut Court, where the former judgment was reversed, for supposed error, in the opinion of the County Court, as shewn by the bill of exceptions.—From the decision of the Circuit Court, Eskridge prosecutes the present writ of error, and assigns as causes, that the Circuit Court did not affirm the judgment of the County Court, but reversed the same, and remanded the cause.

The facts disclosed by the bill of exceptions, in the language thereof, are—" That Eskridge was on a journey to Tennessee: that he arrived at the house of Glover; that his mare was unable to travel farther, in consequence of a supposed founder. Then some conversation took place between the parties, in

regard to an exchange, or in regard to the sale or loan of a horse, by Glover, to Eskridge. Glover agreed to loan a horse to the plaintiff to ride about ten miles, where it was supposed he could get one; or, agreed to exchange, and give Eskridge fifty dollars, in the event the mare did not die in a short time. *It was finally agreed,* that Eskridge should take Glover's horse, and ride him ten miles, and if he liked him, was to take fifty dollars to boot; but, if he was not pleased with his performance, he was to return him in two or three days. Shortly after Eskridge left Glover's house, Glover pursued·him, and told him the mare was about to die, and he would not stand to the trade.

" It was proved, that Eskridge said, a short time before Glover overtook him, that the horse did not suit him, and he would not trade; but, when he was overtaken by Glover, he represented that the time was not out within which he was to say whether he would trade; that the option was with him, and that Glover had reserved no right to rescind the contract.

Glover, by his counsel, requested the Court to charge the jury, that he, Glover, had a right, at any time, before the contract was confirmed by Eskridge, or before the time expired in which Eskridge had a right to return the horse, (to rescind it,) that the obligation must be mutual. The Court refused this instruction, and charged that one party might reserve the right to rescind the contract, on some future contingency, and the other not; that if the jury believed, that from the terms of the contract, Eskridge only, was to have the privilege of confirming or not,

and the contract had been in part executed, that Eskridge was entitled to recover the fifty dollars, although Glover proposed to rescind the contract, before the time expired for Eskridge to return the horse.

The point on which the opinion of the Court, was given, which is now assigned as erroneous, is, that the County Court erred, as stated in the bill of exceptions.

The question here presented, is important in principle, and of difficult solution. Many of the facts contained in the bill of exceptions, may be disregarded, except for the better understanding of such as are more material. In this light may be viewed the various propositions between the parties, prior to the one acted on; but it is necessary to ascertain, as nearly as possible, the precise stipulations of the parties—particularly the sense in which the word, "agreed," which frequently recurs, in the testimony, was understood and received in the Court below.— From its application in the bill of exceptions, it was probably used, as being synonymous with *proposed*, or *offered*.

It is there said, Glover "agreed" to loan Eskridge a horse, or *agreed* to exchange and give fifty dollars, in the event the mare did not die in a short time; and again, that a different understanding "was finally agreed" upon between them—when it is not pretended, that contracts were concluded in either of the two forms above stated—they could only have been propositions, which were not accepted. But, that which is stated to have been *finally agreed* upon, is understood to have been the contract, so far as

any was consummated. It was, *that Eskridge should take Glover's horse, and ride him ten miles, and if he liked him, was to take fifty dollars to boot; but, if he was not pleased with his performance, he was to return him in two or three days.*

The sequel was, so far as is material, that shortly after Eskridge left Glover's house, the latter pursued the former, overtook him, before he had reached the ten-mile point, and told him the mare was about to die, and he would not stand to the trade.—— That Eskridge, insisting that the option was with himself, alone, and his time for deciding was not out, refused to restore the horse; and afterwards determined to insist on an affirmance of the bargain.

Now, the question is, (as it was in the Court below,) whether, under this contract, and the exchange of the possession of the animals, the early notice by Glover to Eskridge, of the rescission of the bargain, had the effect to deny to Eskridge the privilege of afterwards, affirming the contract as proposed or agreed? On this point, the authorities referred to, in argument, are not so decisive, but that professional talent and ingenuity have enabled the counsel to deduce from them plausible arguments, in favor of the opposite conclusions.

*3Term R. 148.* In the case of *Paine* vs *Cake,*[a] the principle decided, was, that a bidder at an auction, under the usual conditions, that the highest bidder shall be the purchaser, may retract his bidding at any time before the hammer is down. The Court, there, maintains the principle, that one party to a contract, can not be bound, while the other is not.

*3Ib. 653.* But, *Cook* vs *Oxby,*[b] is regarded as a leading case,

on contracts of this kind. There, the defendant, having proposed to sell a quantity of tobacco to the plaintiff, at a stipulated price, gave the latter, at his request, a certain time, to determine whether he would buy or not. The plaintiff, within the time, determined to buy, and gave notice thereof to the defendant, who refused to comply. Yet, it was ruled, the defendant was not liable, in an action for the non-delivery.

The available objection to the action, was, that the plaintiff, not being bound by the original contract, there was no consideration to bind the defendant.

That case was slightly different from this, in some of the facts, but does not appear to have been stronger for the plaintiff: for, though here was a change of the possession of the animals, and there, none, in the subject of the contract; yet, in this case, the rescission was claimed by the defendant, before the plaintiff gave any notice of his determination to affirm the contract. In that case, the plaintiff had determined to buy, and given notice thereof, within the time allowed him for that purpose—the defendant having expressed no dissent, until then.

Yet, Lord *Kenyon*, in expressing his opinion, said: "Nothing can be clearer, than that, at the time of entering into this contract, the engagement was all on one side; the other party was not bound: it was, therefore, *nudum pactum.*"

*Buller*, J. said—"In order to sustain a promise, there must be either a damage to the plaintiff, or an advantage to the defendant; but here was neither, when the contract was first made." He maintained,

that the contract could not become complete, or binding, without the united assent of both parties, at the same time. And *Groce*, J. remarked, that, as the agreement was not binding on the plaintiff, before the time appointed for confirmation, and the parties came to no subsequent agreement, there was no consideration, for the promise of the defendant.

Thus it appears, that the reasoning of the Court of King's Bench, in the cases reviewed, is fully applicable to this, and favorable to the defendant.

But a later decision of the same high tribunal, is relied on, by the counsel for the plaintiff, with more confidence. It is *Humphries* vs *Carvalho*.[a] The facts are complicated, but are sufficiently noticed, in the remarks of the judges, for the present purpose. The object of the suit was an affirmance of a contract for certain goods, and the counsel for the defendant had insisted on the authority of *Cook* vs *Oxley*, that the contract had not been completed, so as to bind the vendor.

Lord *Ellenborough*, then Chief Justice, observes— "Here there was a sale-note sent, and an actual sale made by the defendant, through the intervention of the broker, who communicated to the defendant, on the same day, that he had sold the goods; and it was not merely an offer to sell, as in that case, (*Cook* vs *Oxley*;) but the buyer had an option of renouncing the purchase on the *Monday*, which he did not do; and, therefore, it stood absolute." In this *Groce*, J., concurred.

*Bayley*, J., said, the argument of the defendant is that if "*contract give an option to one of the parties to determine it, the law will give the like option to the oth-*

*er until both are bound.*" To this proposition he assents, by not denying it, and proceeds to say—"but here of the parties had an option, after Monday; for, neither the plaintiff not having renounced the contract, within that time, must be taken to have approved of it."

The doctrine in *Chitty on Contracts*, (page 4,) is to the same effect. It is there maintained, that " the assent or consent must be mutual. Every agreement ought to be so certain and complete, that each party may have an action upon it; and the agreement would be incomplete, if either party withheld his assent to any of its terms. The agreement must, in general be obligatory on both parties, or it binds neither."

To this is appended a note of exceptions; as in the case of an infant's contract[a]—a contract, which [a] Stra. 937. is void against one party, in consequence of his omitting to sign it, according to the statute of frauds, and which has been complied with, by the other.[b] [b] 6 East.307 —3 Taunt.

It is further said, by *Chitty*, that, "no contract is [169—5 Ib. 788.] raised by a mere affirmation in discourse;" that " a mere overture, or offer to enter into an agreement, not definitely and expressly assented to by both parties," binds not.

The case of *M'Culloch* vs *The Eagle Insurance Company*,[c] is also worthy of a slight notice. There, [c] 1 Pick'g, 278. the plaintiff wrote by mail, to the defendants, inquiring on what terms the latter would insure the former's vessel. On the first of *January* the defendants answered, that they would insure at a certain rate. But, on the second *of the same month*, they again wrote, retracting the offer. The plaintiff, before he

5 s. & p.          35

received the last letter, put into the post-office an answer to the defendants' first letter, acceding to the terms proposed.

The Supreme Court of Massachusetts determined that the defendants had made no contract. Chief Justice *Parker*, in delivering the opinion of the Court, remarks—"There seems to have been *locus penitentiæ* for both parties;" and again, that, "so long as it continued open for the plaintiff, it must have been open for the defendants, and their revocation was made, before the plaintiff had opportunity to accept."

From all these authorities, it satisfactorily appears, that a contract like the one under consideration, is not binding; that, to have made it so, both parties must have assented to all the terms at the same time; that the plaintiff must have determined to affirm the contract, before the defendant declared his dissent; or that the time for his determination must have expired, before the other gave notice of his rescission. That, while the *agreement* continued the option to one, the *law* gave it to the other. The contract was not complete, while the plaintiff had the privilege of determining whether or not it should be one: so that, admitting the principle, that, "in case of an actual sale, it is binding, though it be agreed, that one party shall have the option of disapproving of, and determining it,"[a] this was not sufficiently consummated—it was not expressed to be an actual or absolute bargain.

The fifty dollars proposed to be given in exchange, does not appear to have been paid; nor does it appear there was any express understanding, that time was

[a] 1 Chit. on C. 4.

to be given for its payment. It is not shewn, but that the plaintiff was to return to the defendant's house, or see him elsewhere, to consummate the agreement, if he determined to affirm it.

The important, but nice distinction is, that this contract seems not to have been actually concluded, with only a reservation of the right to one to renounce it; but, the agreement was, that it should become a bargain, if, on trial of the horse, the plaintiff should determine to affirm the contract; under these circumstances, the law implied the farther condition, that the defendant did not, in the mean while, retract his offer, which, however, he did, and thereby avoided the agreement.

We are, therefore, unanimous, in affirming the judgment of the Circuit Court.