(101 So. 894)

### LUCAS E. MOORE STAVE CO. v. KENNEDY et al. (8 Div. 602.)

(Supreme Court of Alabama. April 24, 1924. Rehearing Denied Nov. 27, 1924.)

1. Contracts ⬤⟾10(4)—Contract whereby seller agreed to sell and buyer to buy all of former's production for year held wanting in mutuality.

Where buyer agreed to buy and seller to sell all staves produced by latter during year, buyer, who caused production to be stopped during year, held not liable for damages for loss of profits which would have been realized, where contract was wanting in mutuality, in that seller was not legally obligated to produce any staves.

2. Sales ⬤⟾89—Evidence held to show no new contract, but modification of existing one with respect to place of operation; burden being on one seeking to establish new contract.

Where seller had agreed to sell and buyer to buy all staves produced by former during year from certain timber tract, evidence held to show that further agreement to shift to another timber tract was not new contract to manufacture all of suitable timber of second tract into staves with first contract as basis only of prices and operation; burden being on seller to establish such contract.

3. Sales ⬤⟾384(1)—Where buyer was to furnish seller certain equipment used in manufacture of staves which seller contracted to sell to buyer, damages held not allowable on ground that equipment was unsuitable where seller made no complaint at time.

Where in contract, whereby seller was to sell and buyer to buy all staves produced by former during year, buyer was to furnish suitable bucker, in suit by seller for buyer's breach of contract, in causing production to be stopped, it was error to allow damages on ground that bucker furnished was not suitable, where it was not shown that seller made any complaint concerning it.

Appeal from Circuit Court, Franklin County; Charles P. Almon, Judge.

Bill in equity by C. M. and W. M. Kennedy against the Lucas E. Moore Stave Company. From the decree, respondent appeals. Reversed, rendered, and remanded.

The contract upon which the suit is based is as follows:

"Lucas E. Moore Stave Co., Incorporated, 826 Common Street.

"New Orleans, Dec. 2, 1919.

"Messrs. C. M. Kennedy & Bro., Amory, Miss.—Dear Sirs: We confirm correspondence by which we agree to buy from you and you agree to sell to us your entire production of split white oak staves produced by you during 1920 at following prices f. o. b. cars shipping point in Mississippi and Alabama:

|      | 1½″     | 1¼″     | 1″      |
|------|---------|---------|---------|
| 36″  | $200.00 | $175.00 | $150.00 |
| 26″  | 115.00  | 100.00  | 75.00   |

"All primes are 4½″ average basis inside of sap. We will accept seconds at half price straight count. A second must work 26″ clear or work full length as an oil stave.

"You are to work principally for the 36″ and to lay off the blocks 38″ long, but we agree to accept as prime any staves that are long enough to equalize to 34″ length. We are to make you the necessary advances for the production of these staves including the cost of stumpage, making, dressing and hauling to the railroad.

"We also agree to supply you with the necessary machinery, when needed, such as bucker, engine, etc.; also an experienced man to look after the bucking of these staves, and to pay our man's wages while working on your staves. The machinery for dressing is to be lent to you free of cost. This contract is to handle by our Mr. W. W. Grace, of Columbus, Miss., who will make you all advances, etc.

"In order that we may not compete with each other in the production of split staves, it is agreed that you work the territory between Oakman, Ala., on the Southern Ry., to Birmingham and from Tupelo to Birmingham on the Frisco.

"Kindly sign copy of this letter, which will serve as a contract.

"Yours very truly,
"LEM/AC. Lucas E. Moore Stave Co.,
"Lucas E. Moore, Vice Pres. & Secy.
"Accepted and confirmed:
"————."

Tillman, Bradley & Baldwin, Wm. M. Rogers, and W. W. Kennedy, all of Birmingham, and Key & Key, of Russellville, for appellant.

The burden of proof to show modification of the contract in writing was upon the appellees. Huntsville Elks Club v. Garrity-Hahn Bldg. Co., 176 Ala. 128, 57 So. 750. Under this contract, the buyer was liable only for refusal of the output actually produced by the seller. McIntyre L. & E. Co. v. Jackson L. Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Jones v. Lanier, 198 Ala. 363, 73 So. 535; Kenan, McKay & Spier v. Home Fertz. Co., 202 Ala. 29, 79 So. 367; Evans v. Ry. Co., 78 Ala. 348; Sheffield Fur. Co. v. Hull, 101 Ala. 446, 14 So. 672; Pratt Coal Co. v. Short, 191 Ala. 378, 68 So. 63; Speculative damages are not recoverable. Brigham v. Carlisle, 78 Ala. 243, 56 Am. Rep. 28; Central Trust Co. v. Clark, 92 F. 293, 34 C. C. A. 354; Bixby-Thiesen Co. v. Evans, 174

Ala. 571; 57 So. 39; Reed L. Co. v. Lewis, 94 Ala. 626, 10 So. 333; Dickerson v. Finley, 158 Ala. 159, 48 So. 548. Moulthrop & Stevens v. Hyett & Smith, 105 Ala. 493, 17 So. 32, 53 Am. St. Rep. 139. On appeal, no weight will be given to the findings of the chancellor. Wade v. Miller, 208 Ala. 264, 93 So. 905.

Travis Williams, of Russellville, for appellees.

The contract of December 2, 1919, was extended. Fail & Miles v. McRee, 36 Ala. 61; Mason v. Ala. Iron Co., 73 Ala. 270; McPherson v. Harris, 59 Ala. 620; Blackman v. Dowling, 63 Ala. 304. Appellees were entitled to recover profits lost. Fails & Miles v. McRee, supra; Mason v. Ala. Iron Co., supra; McFadden v. Henderson, 128 Ala. 231, 29 So. 640; Cooke v. Cook, 110 Ala. 572, 20 So. 64; Martin v. Hill, 42 Ala. 279; Robinson v. Bullock, 66 Ala. 555.

GARDNER, J. The Lucas E. Moore Stave Company is a corporation with headquarters in New Orleans, La., and a branch office in Columbus, Miss., engaged in the business of producing and purchasing staves for both export and domestic trade on a rather extensive scale. C. M. and W. M. Kennedy compose the partnership known as C. M. Kennedy & Bro., who were also engaged in the production of staves, but their operations were less extensive than that of the Lucas E. Moore Stave Company. For the sake of brevity these two concerns will be hereinafter referred to as the Stave Company on the one part, and Kennedy Bros. on the other.

The Stave Company and Kennedy Bros., during the latter part of the year 1919, entered into negotiations relative to the production of split white oak staves by the Kennedys to be sold to the Stave Company, which negotiations resulted in a written contract in the form of a letter signed by the Stave Company and accepted by Kennedy Bros. In this contract the Stave Company agreed to buy from Kennedy Bros., and the latter agreed to sell to the former, all the split white oak staves of certain sizes therein specified, produced by Kennedy Bros. during the year 1920 at the prices therein stipulated. By the terms of this contract the Stave Company agreed to make necessary advances for the production of the staves, including the cost of stumpage, and further agreed to supply necessary machinery when needed, such as a bucker, engine, etc. In order that the parties would not compete with one another in the production of these staves it was agreed that the Kennedys should "work" certain territory therein designated, referred to in the evidence as the "Birmingham zone." This contract bears date December 2, 1919, and appears in the statement of the case.

Very little, if anything, seems to have been done under this contract in the way of production of staves by Kennedy Bros. until the summer of 1920, when approximately 5,000 staves were produced from timber owned by the Stave Company, upon what is known as the Gravlee tract near Cullman, Ala. About the time the Kennedys began to "work" this Gravlee tract, or some time in June, 1920, their attention was directed to a large tract of timber known as the Ezzell tract in Franklin county, and one of the members of the firm then entered into negotiations with the Stave Company by telephone and correspondence, with reference to the purchase of this timber. The Stave Company was interested, and the larger portion of the negotiations were carried on by Mr. Grace, the Stave Company's manager at the Mississippi office. An estimate of the timber was made by the Kennedys, and the Stave Company was notified that the Kennedys had made an offer of $30,000 cash for this timber. The result of the negotiations was a purchase of this large tract of timber for the sum of $30,000 cash, which was paid by the Stave Company. The deed was executed July 1, 1920, the Stave Company being the grantee named therein, and it was understood that the $30,000 was to be charged to the account of Kennedy Bros. as an advancement, as was stipulated in the contract of December 2, 1919.

In order to assist in financing the deal, Kennedy Bros. executed their notes to the Stave Company, aggregating the sum of $18,000, in order that such notes might be indorsed by the Stave Company, and money secured thereon. These were clearly accommodation notes, which, as we gather from the evidence, were in fact to be returned to Kennedy Bros. when the amounts thereof were paid.

It was agreed that Kennedy Bros. should abandon the further production of the staves on the Gravlee tract, and move their force to the Ezzell tract. The Kennedys began the production of staves upon the Ezzell tract in the summer of 1920. In the fall of that year, however, the market for split staves became uncertain and on the decline. Kennedy Bros. insist that in October they were advised to cease production of split staves contemplated by the contract of December 2d, and that in the winter of 1920 the Stave Company permitted them to make only what is referred to as Norfolk staves for a limited time. Norfolk staves were not included in the original contract. In the spring of 1921 the Stave Company stopped Kennedy Bros. from the manufacture of all kinds of staves from this timber, and the latter instituted suit for breach of the contract. Upon petition of the Stave Company the cause was transferred to the equity side of

the docket, upon the theory that the deed of July 1st to the Ezzell tract was in fact executed to the Stave Company as security for the $30,000 advanced, and was in fact a mortgage. Upon removal of the cause Kennedy Bros stated their case by way of original bill, which was answered by the Stave Company, and the answer made also a cross-bill, wherein the Stave Company prayed that said deed be declared a mortgage, and as such foreclosed by decree of the court. Following the transfer of the cause to the equity docket, under the situation here presented, the Stave Company rather than Kennedy Bros. should have filed the original bill. Cornelius v. Moore, 208 Ala. 237, 94 So. 57. The cross-bill, however, of the Stave Company, under the circumstances, serves all necessary purposes as if an original bill. The cause proceeded upon the equity side of the docket upon the pleadings thus framed, and no question was presented as to the pleading or procedure, but the case was submitted for final decree upon pleadings and proof as noted, and the final decree rendered. The chancellor found upon the proof that the Stave Company had breached its contract without fault on the part of Kennedy Bros., ascertained the amount of damages which the latter sustained, and deducted this sum from the amount found to be due by Kennedy Bros. to the Stave Company. The balance found to due by the Kennedy Bros. to the Stave Company was $8,874.93, and judgment for this amount was awarded against Kennedy Bros. The court further stated that the Stave Company had a lien upon the timber known as the Ezzell tract, as security for this sum, and stated that if the amount was not paid within 60 days foreclosure be had, with proper directions to the register in reference thereto. The Stave Company was directed to pay the costs, and from this decree it has prosecuted this appeal.

The court found that the appellees had sustained damages in the sum of $16,302, by reason of the refusal of appellant to allow them to continue the manufacture of timber on the Ezzell tract into split staves for the account of the appellant at the price stipulated in the contract of December 2d, and a further sum of $1,800 damages sustained, by failure on the part of the Stave Company to furnish machinery to buck the staves at the proper time. Other minor breaches claimed by the appellees were not considered meritorious, and were therefore disallowed.

It is the theory of the appellant that the written contract of December 2d determined the rights of the parties, and that it was only modified or supplemented in one respect by them, as shown by the correspondence, viz. that it was to extend to the Ez-zell tract rather than be confined to what is known as the "Birmingham zone." It is insisted, therefore, that upon this theory the contract expired one year from its date, as under its terms it only provided for purchase by the Stave Company of split white oak staves produced by the Kennedy Bros. during the year 1920, and it is further insisted that under its terms Kennedy Bros. were not obligated to produce staves, and therefore the Stave Company was only obligated to purchase at the stipulated price the staves which were in fact produced, and damages could not be recovered of the Stave Company for disallowing a further production of the staves. Appellant insists the case is brought within the influence of the well-recognized principle as to unilateral agreements found stated in McIntyre v. Jackson Lumber Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Kenan, etc., v. Home Fertz. & Oil Co., 202 Ala. 29, 79 So. 367; Jones v. Lanier, 198 Ala. 363, 73 So. 535.

[1] A reference to the contract of December 2d discloses an agreement only on the part of Kennedy Bros. to sell at a stipulated price their production for the year 1920 of white oak staves. There was no obligation on their part to produce any staves, but only to sell at the agreed price such staves as they in fact did produce for that year. The Stave Company could not have maintained an action for damages growing out of a breach of such agreement for a failure on the part of Kennedy Bros. to produce any staves during the year 1920. The contract was therefore wanting in mutuality of obligation. There is no question here as to acceptance on the part of the Stave Company of all staves that were actually produced, but the damages appellees here seek to have established as a set-off to their indebtedness to the Stave Company consist of profits which they insist would have been realized had not the Stave Company stopped further production. Under such a contract as that of December 2d, Kennedy Bros. being under no legal obligation to produce any staves, the decisions of this court preclude their recovery for such damages. Jones v. Lanier, 198 Ala. 363, 73 So. 535; McIntyre v. Jackson Lbr. Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Christie et al. v. Patton, 148 Ala. 324, 42 So. 614. If, therefore, the contract of December 2d is to control, the court erred in allowing Kennedy Bros. such damages of $16,302 as a set-off.

The argument of counsel for appellees does not so much run counter to the proposition of law set forth in brief of counsel for appellant, but rests upon a different theory of evidence concerning the contract between the parties. This theory is that the written contract of December 2d formed only the basis of the contract entered into between

the parties as to the Ezzell tract, and that in fact the agreement as to the Ezzell tract formed a separate and distinct contract to the effect that the timber on this body of land should be purchased and paid for by the Stave Company; the purchase price to be charged as an advancement to Kennedy Bros.' account, with the understanding that Kennedy Bros. were to be allowed to manufacture the suitable timber into staves to be sold to the Stave Company at the same price and upon the same terms stipulated in the contract of December 2, 1919, and that the contract of December 2d was referred to as a basis of prices as well as operation, and that the contract was established both by conversation and correspondence.

[2] Upon original consideration of this cause this court accepted, as sufficiently established, this theory of the case, as did evidently the court below. Upon a reconsideration and re-examination of the evidence, however, we have reached a contrary conclusion, and we are now persuaded there was no new contract entered into, but that the parties only intended that the operations of Kennedy Bros. should shift to the Ezzell tract, and that in fact the terms of the contract of December 2d were to govern and control. Under the contract of December 2d, the Stave Company was to make advances, including the cost of stumpage, and Kennedy Bros., in writing to the Stave Company concerning the purchase of the Ezzell timber, stated that the deed would be made "direct to you, covered by our contract with you for staves dated December 2, 1919," and they evidently make reference to the same contract in the letter of July 8, 1920. And again in the letter of May, 1921, after controversy had arisen between the parties, Kennedy Bros. refer to the contract of December 2d in the following manner:

"We did so and on your orders purchased the timber and proceeded to produce staves *as per our contract with you, which contract held good for the year 1920.*"

We further find upon a re-examination of the evidence that the Kennedys in answer to any inquiry tending to establish obligation on their part to cut into staves all suitable timber on the Ezzell tract, stated that such was their "understanding" of the contract, rather than any positive affirmation that such was the contract between the parties. The testimony of Mr. Grace, for the Stave Company, is in denial of any new contract, but he insists the entire transaction appears in the contract and letters which passed between the parties, none of which establish appellees' theory. But we intended no discussion of the evidence, but merely a brief reference to some of the salient features.

This cause was tried before the chancellor on evidence taken by deposition, and the consideration of facts is here de novo; no weight to be given to the finding of the chancellor thereon. Section 5955, Code 1907.

The burden of proof was upon Kennedy Bros., and we have reached the conclusion that this burden has not been sufficiently met, and that the court below committed error in allowing these damages. The contract of December 2d expired by its terms at the expiration of the year 1920, and we have not overlooked the further insistence of appellant that the evidence fails to show any breach on their part as to accepting that year's production, but that positive direction to cease all production of staves was not given until March, 1921. While we are rather favorably impressed with this further insistence, yet in view of the conclusion above reached, a consideration thereof is unnecessary, and therefore pretermitted.

[3] The court below also allowed the sum of $1,800 damages for a breach of agreement on the part of the Stave Company to furnish a suitable bucker at the proper time. That there was a bucker furnished is without dispute, but it is insisted that it was not a portable bucker. We do not find that in any of the correspondence Kennedy Bros. made any complaint concerning the bucker, or that it was not suitable, and a reconsideration of the evidence has led to the conclusion that the court also erred in allowing such damages.

The chancellor found that the amount due the Stave Company for advances under the contract was $25,111.15, which with interest from June 22, 1921, to date of the decree, May 8, 1923, amounted to the sum of $28,907.79, and this was clearly established by the proof, and, in fact, not seriously controverted. The amount due was reduced by the two items of damages herein referred to, but the conclusion has been here reached that no reduction for such damages should have been allowed. It is without dispute that the deed which is made Exhibit C to the original bill, was intended as a mortgage, the purchase money being advanced by the Stave Company to Kennedy Bros., and title taken in the name of the Stave Company as security for such advances. Mobile B. & L. Ass'n v. Robertson, 65 Ala. 382.

The decree of the court below will be reversed and a decree will be here rendered declaring the deed which is Exhibit C to the original bill to be a mortgage for security of the indebtedness of Kennedy Bros. to the Stave Company, which said sum is $28,907.79, as of date May 8, 1923, that the cross-complainant is entitled to a foreclosure of such mortgage, and to the relief prayed in the cross-bill, denying relief prayed in the original bill, dismissing the same. Kennedy Bros. will be taxed with the cost of the court below, and also of this appeal. The foreclosure of the mortgage and all mat-

ters arising therefrom may be better proceeded with in the court below, and to that end the cause is remanded.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.