KING ET AL. *v.* AMALGAMATED MINING
CORPORATION

(30 P. (2d) 6)

*George D. La Roche,* of Portland (Allan G. Carson,
of Salem, on the brief), for appellant.

*W. C. Winslow,* of Salem (R. C. Glover, of Salem,
on the brief), for respondent.

KELLY, J. Plaintiffs' first cause of action is based
upon alleged expenditures of money and performance
of services pursuant to the terms of the contract in
suit.

Their second cause of action is based upon a claim
for damages alleged to have been sustained by reason
of alleged breaches of said contract by defendant.

The contract, as originally executed, is as follows:

"This agreement made and entered into this 24th day of May, 1930, by and between the Amalgamated Mining Corporation, an Oregon corporation, hereinafter referred to as 'The Corporation' and E. R. King and Arthur Pederson, copartners doing business under the name and style of King and Pederson, hereinafter designated as 'contractor'.

"Witnesseth, Whereas, the corporation has certain mining property which it is developing and operating and is desirous of engaging reliable persons to haul the ore or concentrates from said mine to a railroad; and

"Whereas, the contractor is desirous of engaging in the work of hauling said ore and/or concentrates;

"Now, Therefore, the parties to this agreement in consideration of their mutual covenants hereinafter set forth agree as follows:

"1. The corporation agrees to employ and does by this instrument employ the contractor to haul ore and raw metals in rock formation and/or ore concentrates from bunkers at or near the corporation's main tunnel situated on the Little North Fork of the Santiam River, Marion County, Oregon, which is approximately 30 miles from the town of Lyons, Oregon, or at such other places on said corporation's property not in excess of said mileage to bunkers alongside or near the railroad track at Lyons. Said ore to be in such sizes that the same can be hauled by motor trucks.

"2. The contractor agrees to haul such ore or raw metals in rock formation and/or ore concentrates as the corporation provides for the contractor to haul from the corporation's main tunnel situated on the Little North Fork of the Santiam River, Marion County, Oregon, which is approximately 30 miles from the town of Lyons, Oregon, or at such other places on said corporation's property not in excess of said mileage to bunkers alongside or near the railroad track at Lyons.

"3. It is agreed that this hauling of ore or raw metals in rock formation and/or ore concentrates shall be done exclusively by the contractor. That is to say, the Corporation shall not employ other persons or cor-

porations to haul any of its ore or concentrates during the life of this agreement. The contractor agrees to provide for and to promptly haul all ore or concentrates produced by the corporation and the corporation agrees with the contractor that it will not permit such ore that is hauled to remain in the Lyons bunkers beyond a reasonable period of time or indefinitely but that it will ship the same as promptly as facilities will permit.

"4. The contractor agrees to commence hauling the ore and/or concentrates on or before the 15th day of June, 1930.

"5. It is understood and agreed that the contractor will gravel the upper four miles of new road and will gravel where and when necessary, the lower portion of the road between Lyons and the point where the old road connects with the new and will during the life of this agreement maintain the road all without any cost or charge to the corporation.

"6. The corporation agrees to pay the contractor for the work herein contemplated to be performed and the contractor agrees to receive as full compensation for the work herein contemplated to be performed on the following basis:

"The contractor to receive $5.00 per ton for such ore hauled from the corporation's bunkers at its main tunnel to loading bunkers at Lyons, up to and including the first 2,000 tons thus hauled. Thereafter the contractor to receive $4.50 per ton for every ton of ore hauled as in this contract provided.

"7. The corporation agrees to pay and the contractor agrees to receive the compensation on the following basis for all concentrates hauled from the corporation's mill to the loading bunkers at Lyons.

"The contractor to receive $4.35 per ton for concentrates thus hauled.

"Provided that if the corporation requires hauling of ore for any distance greater than the distance between the corporation's bunkers at main tunnel and loading bunkers at Lyons that the contractor shall be

paid the sum of 15c per ton for each additional mile in addition to the compensation herein provided.

"8. Payment as above provided shall be made to the contractor on the 1st and 15th day of each and every calendar month and in adjusting or ascertaining the amount due to the contractor the weights of such ore or concentrates made and ascertained by the railroad company hauling said ore and concentrates shall be the basis upon which the computations shall be made, provided that arrangements shall be made by the corporation for the railroad company to furnish copies of the original railroad shipping weight certificates.

"9. It is understood and agreed that the corporation shall execute and deliver to the contractor and the contractor shall execute and deliver to the corporation a surety bond in the sum of $10,000.00, executed by a surety company authorized to transact business in Oregon conditioned in each instance upon the faithful compliance with all the terms and conditions of the within contract. This bond to be delivered in each instance within five days from execution of this contract.

"10. This contract shall be in full force and effect until the 15th day of June, 1932. Upon the expiration of the contract the contractor shall have an option to renew the same or for another contract on the same conditions and terms as herein contained if nothing seriously discordant has occurred between the contractor and the corporation during this contract.

"In Witness Whereof" etc.

The breaches of said contract alleged in plaintiffs' second cause of action are (1) failure to furnish the bond as provided for in said contract, and (2) failure to procure for hauling and to be hauled by plaintiffs any greater amount of ore than one carload of 49 tons.

In defendant's answer, the execution of the contract is admitted. It is also admitted that plaintiffs hauled 49 tons of ore thereunder for which there is due to them from defendant the sum of $245.

In said answer, it is alleged that on or about June 5, 1930, plaintiffs and defendant modified said agreement by an oral agreement that the stipulations and requirements, with respect to furnishing of bond, would be abrogated and waived and, in pursuance of said oral modification, plaintiffs withdrew the bond theretofore furnished defendant, and caused it to be cancelled.

Paragraph VI of defendant's answer is as follows:

"That on or about the 1st day of August, 1930, there was furnished to the plaintiffs for hauling 49 tons of ore and which the said plaintiffs hauled from defendant's property to Lyons, Oregon. That immediately following the hauling of said ore in this paragraph mentioned, the plaintiffs left the property of the defendant to engage in other work, lines and endeavors and remained away from defendant's property from that time onward except for such trips made to pick up equipment left there on."

And paragraph VII of said answer is as follows:

"That it was understood and agreed that until such a time as defendant had production of ore sufficient for hauling to the railroad that the plaintiff would not be required to maintain any equipment upon the premises of defendant, conditioned upon ten days notice, if plaintiffs' services were needed for hauling, that such equipment at that time would be supplied; that the contract between plaintiff and defendant would from that time be carried out in accordance with its terms."

Defendant's abstract of record discloses that an amended complaint and an amended answer were filed, but these amended pleadings are not with the transcript.

In their case in chief, plaintiffs introduced in evidence a document, which is written upon stationery bearing the defendant's name, the names of its officers,

its telephone number and its Portland office address, which are here omitted. The document is as follows:

"Portland, Oregon,
September 15, 1930.

Messrs. King & Pederson,
Bandon, Ore.

Gentlemen:

With reference to your contract with this Company dated May 24th, 1930. You request permission to withdraw your trucks from our service until such time as production is ready for hauling to the railroad. This permission is granted with the provision that you will have sufficient equipment on the ground to haul our product within ten days from date of notice that we are ready to utilize your services.

Yours very truly

Accepted:     Amalgamated Mining Corporation
King & Pederson     By A. W. Metler, Treasurer
Elmer R. King.     By J. M. Dixon, President."

■ Error is predicated upon the order of the trial court overruling defendant's motion for involuntary nonsuit and also upon the order overruling its motion for a directed verdict; but no error was committed by the learned trial judge in that respect, for the reason that defendant admitted a liability of $245 in favor of plaintiffs.

The crucial question is whether any actionable breach by defendant of the contract existing between the parties has been shown, other than the failure to pay for the 49 tons of ore that plaintiffs hauled.

■ The failure of defendant to furnish a bond, even if not waived by plaintiffs, in itself alone, would not constitute such a breach as to support a recovery by plaintiffs herein.

■ We are confronted with the question of whether mere failure to produce more than 49 tons of ore or concentrates for plaintiffs to haul constitutes a breach of the contract in suit.

We think that it does not. This is not a case requiring or permitting extraneous testimony to determine the quantity specified. It is clearly a contract to haul all ore or concentrates produced by the corporation. We are not unaware that there are authorities holding that such a contract as the one in suit is unilateral: *Vinson v. Little Bear Sawmills*, 216 Ala. 441 (113 So. 385); *Springton Coal Co. v. Bowling et al.*, 228 Ky. 317 (14 S. W. (2d) 1082); *Weil v. Chicago Pneumatic Tool Co.*, 138 Ark. 534 (212 S. W. 313); *Harrison & Garrett v. Wilson Lumber Co.*, 119 Ga. 6 (45 S. E. 730); *Hazelhurst Lumber Co. v. Mercantile Lumber & Supply Co.*, 166 Fed. 191; *Southern Fuel Co. v. Southern Ry. Co.*, 215 Ala. 355 (110 So. 715); *Lucas E. Moore Stave Co. v. Woodley*, 213 Ala. 570 (105 So. 878); *Lucas E. Moore Stave Co. v. Kennedy*, 212 Ala. 193 (101 So. 894); *Jones v. Lanier*, 198 Ala. 363 (73 So. 535). But that question is not necessarily involved here.

The provision in paragraph 6 of said contract, fixing the amount to be paid for the work therein contemplated to be performed at $5 per ton for such ore hauled from the bunkers at the main tunnel to the loading bunkers at Lyons up to and including the first 2,000 tons thus hauled, is at most merely an estimate of the tonnage which it was thought by the parties might be produced. Such an estimate is merely expressive of expectation and not controlling: *Stanfield v. Arnwine*, 102 Or. 289 (202 P. 559).

The principle involved is that the estimate is not intended as a warranty and the fact that the parties have estimated the amount clearly indicates their intention not to contract with reference to any specific quantity: *Kenan, McKay & Spier v. Yorkville Cotton Oil Co.*, 109 S. C. 462 (96 S. E. 524, 1 A. L. R. 1387), and cases cited in subdivision II of annotation at page

1393. Cases cited in subdivision III, 9 A. L. R. 276, and in subdivision III, 23 A. L. R. 576.

Plaintiffs cite cases recognizing the rule that, though not expressly stated, there may be obligations on the part of one party to a contract corresponding and correlative to the express obligations of the other party thereto. In none of the cases cited by plaintiffs, is the question involved as to whether under a contract for the transportation or sale of all of a commodity produced by a corporation, during a specified period, such corporation may be required to operate its plant, factory or mine as the case may be.

In one of the cases cited by plaintiffs, the plaintiffs herein agreed to take the product of defendant's mine for a period of six months. Before that six months elapsed, the defendant leased its mines to a third person, who operated it and disposed of the product to the other parties: *Robert E. Lee Silver Min. Co. v. Omaha & Grant Smelting & Refining Co.*, 16 Col. 118 (26 P. 326). In the case at bar, it is not suggested that any part of the product of defendant's mine was hauled by any one other than plaintiffs.

In another of the cases so. cited, one of the defendants agreed to take charge and operate plaintiffs' docks and warehouses and handle all freight passing through the same during the navigation season of 1889. Said defendant abandoned the contract before the navigation season had elapsed and a recovery by plaintiffs was affirmed: *Eastern Ry. Co. of Minn. v. Tuteur, et al.*, 127 Wis. 382 (105 N. W. 1067). Except as above stated, the cases cited by plaintiffs do not deal with contracts involving the entire product or output of a mine or other producing agency.

The document, dated September 15, 1930, above set out, changed the terms of the original contract by pro-

viding that defendant should give plaintiffs ten days' notice before it could avail itself further of plaintiffs' services. Moreover, this document also evidences an agreement that plaintiffs were not to reengage in the work until "such time as production is ready for hauling to the railroad".

There is no evidence tending to show that any such notice was given, or that any of defendant's ores or concentrates thereafter were ready for hauling to the railroad.

No breach of the contract upon which plaintiffs were entitled to recover damages having been shown, except the admitted breach by failing to pay for the ore actually handled, plaintiffs were not entitled to recover judgment for an amount in excess of $245 and interest thereon from the date payment thereof became due, namely, September 1, 1930.

The judgment of the circuit court is hereby modified by reducing the amount of the judgment awarded to plaintiffs to the sum of two hundred and forty five and no/100 dollars ($245.00) with interest thereon at the rate of 6 per centum per annum from the first day of September, 1930, and the further sum of forty-nine and 25/100 ($49.25) costs and disbursements in the circuit court, for which said sums and interest, as above specified, judgment is hereby rendered herein against defendant and in favor of plaintiffs. It may be remarked that, while an admission of liability in said sum of $245 appears in defendant's answer as stated, no offer of judgment was made therein and the allegation of tender thereof is not supported by the evidence.

It is further ordered and adjudged that defendant recover its costs and disbursements on appeal.

RAND, C. J., BELT and ROSSMAN, JJ., concur.